DENNIS J. HERRERA, State Bar #139669
City Attorney
MEREDITH B. OSBORN, State Bar #250467
Chief Trial Deputy
REBECCA A. BERS, State Bar # 287111
Deputy City Attorney
Fox Plaza
1390 Market Street, Sixth Floor
San Francisco, California 94102-5342
Telephone:	(415) 554-4224
Facsimile:	(415) 554-3837
E-Mail:	rebecca.bers@sfcityatty.org

Attorneys for Defendants
KIERSTIE BARR, HAVA McCARTER-RIBAKO,
SAMSON HUNG, PHILLIP LEUNG, MARINA CHACON,
FLINT PAUL and CITY AND COUNTY OF SAN FRANCISCO

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KIRSTIN JOHNSON, for herself, and as guardian ad litem for her five minor children, F.M., M.D.M., M.P.M., V.M., and T.M., and SAM MARTISIUS,<br><br>Plaintiffs,<br><br>vs.<br><br>San Francisco Police Officers KIERSTIE BARR (#129), HAVA McCARTER-RIBAKO (#4187), SAMSON HUNG (#359), PHILLIP LEUNG (#328), Lieutenant MARINA CHACON (#638), and Sergeant FLINT PAUL (#648), in their personal individual capacities; the CITY AND COUNTY OF SAN FRANCISCO; and DOES 1 through 15,<br><br>Defendants. | Case No. 3:20-cv-01569-SK (KAW)<br><br>**JOINT LETTER REGARDING PROTECTIVE ORDER**<br><br>State Court Action Filed:  October 25, 2019<br>Removal Filed:                   March 3, 2020<br>Trial Date:                          October 12, 2021 |

Dear Judge Kim:

This letter relates to a discovery dispute in the above-referenced matter. The relevant case management deadlines are: (1) a telephonic conference with Judge Westmore on June 25, 2020, regarding scheduling a settlement conference; (2) fact discovery closes on January 29, 2021; (3) the deadline for hearing dispositive motions is June 28, 2021; (4) the pretrial conference is September 3, 2021.

By signing below, the parties attest that they met and conferred telephonically before filing this letter, and that they adhered to Section 9 of the Northern District's Guidelines for Professional Conduct regarding discovery.

Dated: June 25, 2020

                         DENNIS J. HERRERA
                         City Attorney
                         MEREDITH B. OSBORN
                         Chief Trial Deputy
                         REBECCA BERS
                         Deputy City Attorney

                         By: */s/ Rebecca A. Bers*
                               REBECCA A. BERS

                         Attorneys for Defendants
                         KIERSTIE BARR, HAVA MCCARTER-RIBAKO,
                         SAMSON HUNG, PHILLIP LEUNG, MARINA
                         CHACON, FLINT PAUL, AND CITY AND COUNTY
                         OF SAN FRANCISCO

Dated: June 25, 2020

                         BEN ROSENFELD
                         SINGLETON LAW FIRM

                         By: */s/ Ben Rosenfeld*
                               BEN ROSENFELD

                         Attorneys for Plaintiffs
                         KIRSTIN JOHNSON (on her own behalf and as GAL for
                         her minor children) and SAM MARTISIUS

## I. FACTUAL BACKGROUND

The parties agree that a protective order is necessary in this case. However, they disagree about the form that protective order should take. In March 2020, the parties met and conferred regarding a number of topics, including the need for a protective order. Defendants expressed a desire to include an attorney's eyes only provision in the protective order, and Plaintiffs expressed skepticism, but agreed to consider Defendants' proposal. On May 11, 2020, Defendants sent a proposed stipulated protective order to Plaintiffs, which modified the Northern District's Model Protective Order for Litigation Involving Patents, Highly Sensitive Confidential Information and/or Trade Secrets. A copy of that proposed stipulated protective order is attached hereto as **Exhibit A.** On May 22, 2020, Plaintiffs responded with proposed tracked changes. On May 28, 2020, Defendants responded, with questions regarding three changes Plaintiffs proposed to the protective order. On June 5, 2020, Defendants requested that the parties meet and confer regarding the topics identified in Defendants' May 28, 2020 email regarding the changes to the protective order. On June 11, 2020, the parties met and conferred telephonically, and the parties could not agree on whether the protective order should contain an attorney's eyes only provision or not. Plaintiff's counsel contends that the parties should use the Northern District's Model Protective Order for Standard Litigation.

## II. DEFENDANTS' POSITION

Defendants seek to prevent unintentional violation of state law regarding the protection of documents regarding juveniles to specific protections by requesting an attorney's eyes only provision as part of the protective order in this case. Five of the plaintiffs in this case are juveniles, and among other things, Plaintiffs claim that the children were unlawfully removed from their parents' custody. It is undisputed that following the parents' arrest, the children were referred to Mendocino County child protective service.

Records related to juveniles are entitled to heightened protections under California law. Cal. Wel. & Inst. C. § 827. The process for obtaining these records is prescribed by law, and shall be referred to herein as an "827 petition." *Id.* California law "gives the juvenile court the *exclusive* authority to determine when juvenile records will be released to anyone other than those designated" by law. *In re Anthony H.*, 129 Cal. App. 4th 495, 502 (2005), *citing People v. Superior Court,* 107

Cal.App.4th 488, 491 (2003).  Plaintiff suggests that the protections required by State law are irrelevant to this case because it is not a juvenile dependency case but a civil rights case.  However, as *In re Anthony H.* makes clear, the mandatory protections of Section 827 apply to juvenile case files held by State and local agencies, regardless of the gravamen of the cause of action.  The parties are in the process of entering into a stipulated petition to Mendocino County Superior Court.

      **A.**      **Defendants' Position Regarding the Protective Order**

Defendants contend that a protective order that provides for attorney's eyes only protection is necessary to protect the juvenile records that will be the subject of discovery.

Defense counsel contacted Mendocino County Counsel's office to confirm the procedures in that county for an 827 petition, and to clarify what level of protection the Court regularly provides for such records.  County Counsel for Mendocino described to Defense counsel the terms of the protective order regularly issued by the juvenile court in responding to 827 petitions.  Defense counsel understands the terms to be similar to if not exactly the same as the attorneys' eyes only provision contained in the Northern District's model protective order for litigation involving patents, highly sensitive confidential information and/or trade secrets.  Although the juvenile court will issue a protective order with the order on the 827 petition, Defendants believe a protective order for the civil litigation that accords the same level of protection is necessary, in part because the juvenile records may be the subject of a deposition, meaning the portion of the deposition during which those records are discussed must be accorded the same level of protection to which the records are accorded.

In Defense counsel's experience with 827 petitions in other jurisdictions, the process of obtaining juvenile records can take a long time.  Therefore, Defendants believe it would unreasonably delay litigation to await the juvenile court's order on the 827 petition before entering a protective order in this case.[1]  Defendants believe that a modified version of the Northern District's model protective order for highly confidential information is appropriate in this matter. (See Exhibit A.)  The model order has been adapted to omit irrelevant source code and trade secret language.

---

[1] Plaintiffs seem to misunderstand this point; Defendants *do not* suggest that the litigation of the federal protective order will delay the Mendocino juvenile court.  Instead, Defendants seek to resolve the issue of the protective order in this Court without awaiting the juvenile court's decision regarding the level of protection to which the records are entitled.

**B.     Defendants' Position Regarding Related Discovery Issues**

Defendants contend that the body worn camera (BWC) footage containing images of the minors also must be produced with protections consistent with that required by Mendocino Juvenile Court. Despite Plaintiffs' disagreement on this topic, Plaintiff has refused to provide a HIPAA waiver for the records related to F.M.'s medical treatment at UCSF Benioff Children's Hospital for records including alcohol use until the parties have sorted out the protective order and stipulation regarding the juvenile case file.[2] Defendants recommended that F.M. receive a medical evaluation because of a bruise on his face, and because Ms. Johnson was breastfeeding him while intoxicated. Thus, UCSF may have tested for alcohol poisoning, records that would likely fall under this specialized release.

Defendants do not object to treating juvenile medical records obtained by subpoena as subject to the protective order, but rather contend that *all* records containing the juveniles' names, health information, or likenesses, should be protected. Defendants are concerned that Plaintiffs' counsel is using the litigation of the protective order as a negotiating chip to delay Defendants' access to relevant documents. In fact, Plaintiffs' counsel stated the following as the only terms under which he would present the HIPAA release to his client for signature:

> If/when we get a protective order in place which specifies protection for the juvenile records (we believe they should be handled as confidential, not highly confidential) AND you agree to produce the fruits of your subpoena to us (no, not going through your subpoena service; directly and without cost) AND we agree to and submit a final stip for the juvenile records to the Mendocino County Superior Court, I will review your requested HIPAA waiver for the baby's medical records related to this incident with the intention of getting it signed in order to facilitate your subpoena. (I can't promise we won't then have some related edit or request, but my intention, barring the unforeseen, will be to provide you the requested HIPAA release.)

Records protected by Section 827 include, among other things, reports made by social workers, all documents made available to those social workers, and all video, audio tapes, photographs and other exhibits admitted at a juvenile court hearing. Cal. St. Fam. Juv. R. 5.552 (a) (2), (3), (6). Caselaw interpreting Section 827 also makes clear that documents involving juveniles fall under the protection of this statute even if the minors are not involved in juvenile court proceedings. *Wescott v.*

---

[2] Defendants sought to meet and confer telephonically with Plaintiffs regarding this topic, so that it could be adequately litigated along with the issue of the protective order, but Plaintiffs' counsel refused to meet and confer.

4

*County of Yuba*, 104 Cal. App. 103, 106 (1980) ("Plaintiff argues that section 827 is inapplicable asserting it only relates to documents filed pursuant to a juvenile court hearing and in this instance no such proceedings are pending or foreseen. She is wrong."), citing *T.N.G. v. Superior Court*, 4 Cal.3d 767 (1971).  Although *Wescott* and *T.N.G.* both discussed juvenile delinquency files, both delinquency and dependency files are subject to the same limitations under 827, and there is no public policy reason to provide lesser protections to juveniles in custody for potential dependency proceedings than juveniles detained for potential delinquency proceedings.  Thus, like the incident report, the BWC and photographs taken of the children at the scene appear to be subject to protection under Section 827.  The children's privacy can be protected by anonymizing their names in written documents.  However, images of the children are relevant to the litigation, and cannot be blurred or redacted without removing relevant information.  For that reason, Defendants believe images of the children must be subject to the attorneys' eyes only provision.

Plaintiffs have ascribed malevolent motives to Defendants' position.  However, Defendants seek a protective order to avoid violating the very strict rules governing juvenile records, and to protect the minor plaintiffs.  It is a misdemeanor to intentionally violate some of the protections of Section 827.  *Id.*  Plaintiffs' counsel has already made statements to the press regarding the BWC. (See ECF No. 15, 6:5-19.)  Defendants are concerned that, without the proper protections, images of the children from the BWC could end up in the public sphere, which would not only violate the law, but could also do lasting harm to the children.

### III. PLAINTIFFS' POSITION

Defendants do not identify any factual basis nor legal justification for departing from the Court's carefully honed model protective order for standard litigation.  Nor do they identify any legal or factual basis for seeking to designate policy body worn camera video as confidential, especially "highly confidential - attorneys' eyes only."

As a preliminary matter, this is a civil rights case brought by the parents of the children in question, not a dependency or abuse case.  The children live with their parents—a father who is a respected emergency physician in Willits, CA, and their full-time mother, who is also their guardian ad litem in this case, as appointed by the Superior Court.  The only entities/parties who have ever

5
Joint Letter re Protective Order; Case No. 3:20-cv-01569-SK (KAW)                    n:\lit\li2020\200726\01457714.docx

separated the children from their parents are the defendants in this case, which is why plaintiffs are suing them.  As soon as the parents posted $40,000 in non-refundable bail bonds so they could terminate the nightmare visited on their family by defendant police officers, they drove north, whereupon Mendocino County child welfare authorities promptly released the children back into their parents' custody, accompanied by a supervising grandparent, in the early morning of February 2, 2019.  Four days later, a Mendocino County social worker conducted an at home visit (at the family's farm in Covelo), fully released the children to their parents' custody, and closed the file.  See **Exhibit B** hereto – a page from the Mendocino County CPS file *which Mendocino County officials themselves provided to the parents*, further negating defendants' baseless contention that juvenile records in this case need to be secreted from the children's own parents.

### A.     Level of Protective Order

Defense counsel's observation that the Mendocino County Superior Court has exclusive authority to fashion a protective order governing its release of any juvenile records also contradicts' defendants' argument that this Court should or must fashion an extreme protective order of its own.  In the event the Superior Court imposes attorneys' eyes only restrictions in its protective order, it will obviously control the handling of those records.  Contrary to defense counsel's assertion above, there is no reason to believe the Superior Court will impose attorneys' eyes only restrictions on the minors' records, because (1) there is not, and this is not, a dependency case, and (2) Cal. W&I Code §§ 827(a)(1)(D) and (a)(5) expressly grant a "minor's parent or guardian" access to the minor's case file.

Moreover, plaintiff's undersigned counsel is party to discussions with defense counsel and Mendocino County counsel regarding the parties' incipient joint request for juvenile records, and the issue of the level of protective order adopted by this case has not come up even once in discussions or drafting of documents.  Therefore, defense counsel's argument that failing to impose a trade-secrets style protective order in this case will delay production of juvenile records by the Mendocino County Superior Court is a completely manufactured red-herring.

### B.     Police Body Worn Camera Video

Defendants have not and cannot cite a single factual or legal basis for designating the police body worn video "highly confidential - attorneys' eyes only" (or even confidential at all, though they

are welcome to so designate it, upon which plaintiffs likely will challenge such designation), simply because it depicts the faces or voices of the children.  Contrary to defense counsel's assertion, W&I Code § 827 does not even apply to the police video because it is unrelated to any juvenile "case file."  It was generated by SFPD and Sheriff's officials, not by any juvenile case agent, nor in the course of any dependency case.  Nor was it even added to any juvenile case file.  Even if it were, there is no basis for defendants' to prevent the parents, *who were there,* from seeing video of their own children, which would also directly contravene W&I Code §§ 827(a)(1)(D) and (a)(5) expressly granting access to a minor's records by "the minor's parent or guardian."  Tellingly, defendants do not and cannot cite any law in support of their position.

      The only 'logical' basis defendants have for preventing the parents from viewing the police video is a completely prejudicial and improper one – namely, frustrating counsel's ability to work with their clients to prosecute this civil rights case.

      The only 'logical' basis defendants have for designating the police video as confidential at all is to prevent embarrassment to themselves.  But that too, of course, is an illegitimate basis.  Be that as it may, defendants are free to designate their video as confidential under the standard litigation protective order.  And plaintiffs are free to challenge such designation.  And then the issues can be briefed (including defendants' presumptive burden to narrowly redact any actually confidential visual or audio material in the videos), and the Court can decide.  But defendants' claim that they should be entitled to hide such video from the parent plaintiffs is totally unsupported and beyond the pale.

      Defense counsel's "argument" that plaintiff's counsel might harm the children by releasing video of them to the media is a patently cheap shot which in no way advances defendants' argument.  Setting aside the First Amendment issues implicated by defense counsel's statement which are not before the Court, *compliance* with the terms of a protective order is not governed by the level of protection it affords.  That is, designating the video "attorneys' eyes only" does nothing more to ensure compliance with the protective order than designating it "confidential."  The only thing to be accomplished by the stricter designation would be violations of plaintiffs' Sixth and Fourteenth Amendment rights to counsel and due process.

### C. Defendants' Other Proposed Modifications to Protective Order

Defendants also request, by virtue only of their redline markup of the Court's model protective order for Litigation Involving Patents, etc, myriad other edits, to which plaintiffs object, and which defendants have not defended in accordance with the Court's Standing Order (Dkt. #3-1 at 3:19-26). Plaintiffs therefore do not understand this joint letter to be the proper vehicle for raising their line item objections to edits defendants do not even defend, nor does it afford sufficient space to do so.

For each of the reasons above, the Court should deny defendants' request to deviate from the Court's well-considered model protective order for standard litigation, which is what this litigation is.

### D. Defendants' Requested HIPAA Authorization for Baby's Exam Records

Defendants seek to subpoena records of a medical examination they subjected the infant plaintiff to, "because of a visible bruise on his face, and because Ms. Johnson was breastfeeding him while intoxicated." The bruise was small, old, and caused by a sibling during play, as defendants could see for themselves, Ms. Johnson told them, and the examining physician concluded. And even if Ms. Johnson were breastfeeding her child while intoxicated, which plaintiffs dispute, this is not an issue in this case, which turns on whether the defendant police officers had probable cause to arrest the plaintiff parents. Since defendants did not breathalyze the baby, even if he had alcohol in his system, this could form no part of their objective determination whether they had probable cause to seize him off his mother's back. On top of this, the medical literature contradicts the canard that it imperils the health of an infant to drink while breastfeeding. Plaintiffs have not made a claim regarding the baby's physical wellbeing or otherwise put his physical health at issue.

Regardless, the dispute is moot because plaintiffs have agreed in principle to provide defendants the HIPAA authorization they request (even though they plainly have no duty to do so), once defendants meet the reasonable conditions which defense counsel quotes above. It is unclear what further defendants are asking of the Court.